We'll hear argument in 08-1438, Sossamon v. Texas. What are you going to look like, Mr. Schnapple? Mr. Russell. Russell, Mr. Chief Justice, and may it please the Court. By accepting Federal funds for its prisons, Texas consented to suit for appropriate relief for violations of the Religious Land Use and Institutionalized Persons Act. The question in this case is whether that appropriate relief encompasses damages. If you simply asked what kind of relief is generally appropriate against a State, the answer would be no relief, not even an injunction, because States ordinarily are not subject even to suit without their consent. And so RLUIPA necessarily asks a more precise question, and that is, what relief is appropriate against a State that has consented to be sued for violations of this sort? Damages, for example, are perfectly appropriate against a State that has consented to be sued for breach of contract. What would it be, Mr. Russell, if there were a suit under RFRA because a Federal penal institution was not allowing for the religious practices that the Act protects? In a suit under RFRA, could there be — would damages be an appropriate remedy? In our view, they are, although it's a different context, and we recognize that the Government disagrees with us on that. We can't point to the Spending Clause contract analogy that applies with respect to Spending Clause legislation as RFRA applies to the Federal Government. But there are other indications, including, for example, the long tradition of damages being appropriate relief for the violation of the right. Ginsburg. But can we back up a minute? You're saying you could get them against the Federal Government, too, but the Government doesn't think so. That is our view, although we recognize that RLUIPA is different in this respect, and that it's a Spending Clause statute under which — and this Court's decision, Barnes v. Gorman, makes clear that damages are a traditionally appropriate relief for the violation of any Spending Clause statute. Of course, there's also a tradition that damages are appropriate for the violation of civil rights. Take statutes like Title VI, Title VII, Title IX, Section 504 of the ADA. The list goes on and on where Congress has created damages as the quintessential remedy to enforce civil rights. And when Congress has subjected States to suits under such statutes, it has always put them on equal footing with other defendants and subjected them to damages as well. But even beyond that … Scalia. But did it use such language as appropriate relief? Well, for example … I mean, that's the question. Our cases say it has to be clear to the State. When they go into one of these schemes, it has to be clear what liability they're subjecting themselves to. And in these other cases, I think it was clear. I don't think it's clear simply the word appropriate relief. No, we're not saying that the word appropriate relief in itself supplies the clarity. It's looking at that language and the way the Court interprets statutes generally. Among other things, looking at the tradition and what constitutes appropriate relief for a violation of this sort. And we do think that Barnes v. Foreman is appropriate precedent in telling the Court and telling Texas what kind of relief is generally thought appropriate to satisfy Congress's desire to remedy violations of a spending clause statute. We recognize, of course, that Barnes didn't involve sovereign defendants. But the local governments in that case had the same rights as the State would. But it just comes out of the spending clause rather than the Eleventh Amendment. That is, both constitutional provisions prohibit Congress from subjecting defendants to damages suits under spending clause legislation without their consent. And this Court has enforced that identical constitutional right with the same clear statement test derived from Penhurst v. Holderman. Even more, the contract analogy the Court relied on in Barnes is no less apt simply because one of the recipients is the State. Roberts, the contract analogy, I suppose, would provide that the meaning of the contract is interpreted against the drafter. Right? Well, that would have been true in Barnes as well. Yeah. So to the extent the State is arguing for a restrictive interpretation, it gets at least a little help from the fact that the Federal government wrote the statute. Well, it gets the same amount of help as the local governments got in Barnes, which wasn't enough. And not only does the analogy, I think, apply, so does the remedy. Damages are a quintessential appropriate remedy for breach of contract by a State, so long as the State has agreed to be sued for violation of a contract. Mr. Russell, if a State looks at this statute and says, oh, this statute preserves the PLRA, and under the PLRA, there are no damages without having a physical injury. So putting the PLRA together with appropriate relief, PLRA is telling us it's not appropriate relief when there's no physical injury. Well, I would say two things about that. One, keep in mind that the PLRA limitations only apply to incarcerated individuals. It doesn't apply to the people RLUIPA protects in State-run nursing homes or mental health facilities. And so Congress wouldn't have been thinking that appropriate relief is defined in some sense by the scope of the PLRA. In addition, we think the fact that Congress expressly said that the PLRA applies to limit the relief that's otherwise available under RLUIPA shows that Congress didn't think that the PLRA itself made the relief inappropriate. It's simply that there is some relief that's otherwise appropriate that will be limited in some circumstances by the PLRA. Ginsburg. But in the prison setting, then, isn't it an academic question, because there are not going to be damages anyway? No, that's not true, for a couple of reasons. One, there are many cases involving pecuniary damages. There's destruction of religious items that won't be subject to the PLRA limitation. There are cases that give rise to pecuniary claims. So there's destruction of a religious item, a Bible or something like that. There are also cases in which the violation will result in a physical injury. There are cases where people are deprived of food for long periods of time. There's a case where a prison refused to transport an inmate for medical treatment outside of the facility because he wouldn't take off his yarmulke. Congress, I don't think, would have thought that the PLRA limitations rendered a damages remedy unimportant, and at the very least. Excuse me? Does it include punitive damages? The statute, I think, does not in light of Barnes, because Barnes said that you get traditional contract remedies and punitive damages are not a traditional contract remedy. Beyond that tradition, there's also textual cues in the statute itself. There are three of them that I'd like to focus on. I'll list them and then discuss them. One is the definition section, which lumped States in together with local governments in the definition of government. The second is the Federal enforcement provision, which specifically allows suits by the United States, but only for the equitable and declaratory relief that the State says is the only thing that's available under appropriate relief. And finally is the fact that the statute separately already authorizes suits for injunctive relief against State officials, making the addition of suits against States effectively surplusage unless some other kind of relief is available against the State. Beginning with the definition section, this Court recognized in the United States v. Nordic Village that where Congress in the Bankruptcy Act defined governmental unit to include both the United States and a State, that Congress was making clear, quote, that States and Federal sovereigns are to be treated the same for immunity purposes. And I think the same lesson comes out of the fact that RLUIPA defines governments to include not only States but local governments and subjects all governments to the same cause of action for the same appropriate relief. Congress was expressing there, as clear as it could, that there was a definitional equivalence between States and local government. Scalia, but I mean, that means either that the Federal government or that the State government is liable for damages just as municipalities are, or that municipalities are immune to suit for damages just as the States are. I mean, you don't know which way that cuts. Well, I'll point you to other provisions of the statute that maybe. Let's talk about it. Shed some light. Okay. One is the fact that, as I mentioned before, the statute, and I think the State agrees, already allows suits for injunctive relief against State officials in their official capacity. The only thing that adding States as defendant would accomplish in light of that would simply be a change in the caption of the lawsuit unless States are subject to some relief that State officials under Ex parte Young are not. And the. Sotomayor, well, except this would be a violation of the statute, not a violation of a constitutional right. So under Ex parte Young, they couldn't necessarily get an injunction. Well, I would set aside the question of whether Ex parte Young applies of its own force. I think by defining officials as a form of government and authorizing suits for appropriate relief against officials, I think everybody agrees that that authorizes suits against the officials for at least injunctive relief. And then the question is, well, what does it accomplish to also authorize suits against States? And I think the obvious answer is that it authorizes a damages claim against this State. And even in light of Barnes, the State seems to acknowledge that damages are appropriate relief against local governments under this statute. Scalia, I can conceive of a case where the State's violation of RLIPA consists of a State statute that simply deprives the individual of his rights under RLIPA. What State official would you sue? It seems to me you couldn't sue the State legislature, so it would make sense to have an injunction against the State. I think it's common in that circumstance to sue the State attorney general for Ex parte Young relief, for example, if you have a constitutional claim against the statute, as may very well have happened in the California case, or the Governor, I guess. And so I don't think that having a State as a defendant is necessary for that purpose here. In addition, as I mentioned before, I think even the State acknowledges that damages are appropriate relief against local governments. But Congress made clear that when it intended the identity of a party to result in a dramatically different scope of relief, it did so expressly. And you can see that in the U.S. enforcement provision. Their Congress specially authorized suits by the United States and had its own remedial provision, which provides only for declaratory and injunctive relief. And that shows both that Congress didn't expect courts to simply figure out that different kinds of defendants should be subject to different appropriate relief, but also that the State should be subject to different appropriate relief. But also, isn't it argued that a possible purpose of that was to make it clear that the Federal Government couldn't sue a State to recover money that had been given to it? Well, the fact — I would say two things about that. One is Congress didn't limit that provision to suits against States. Anybody who gets sued by the United States is limited to equitable injunctive relief. And that's, again, an example of Congress treating States the same as everybody else. Whether they're sued by the United States or sued by a private party, it's the same relief. It's the same remedial provision. And we think that suggests the same relief. That provision also, kind of the language of that provision, injunctive or declaratory relief, stands in pretty stark contrast to the facially broader phrase, appropriate relief, in the general provision. In addition to RLUIPA itself, I think it's also worth pointing out that the State had independent notice under section 2007, and this is the Rehabilitation Act amendments of 1986, where Congress made clear to Texas that it would be subject to suit for damages under any statute that — under the section of any statute that prohibits discrimination by Federal funding recipients. And I think the question here boils down to whether RLUIPA is materially distinguishable from section 504, which is listed in section 2000d7 as an example of a statute of prohibiting discrimination. And if — I think that means that the catch-all has to at least be broad enough to encompass section 504. And in our view, the two statutes are not distinguishable. Both prohibit both the kind of disparate treatment of similarly situated individuals that the State acknowledges constitutes discrimination and requires accommodations in some circumstances. Alitoso, you addressed the implicated — the effect of the issue here on persons who are in State institutions other than penal institutions. What would be — what's the effect of the issue here on land-use restrictions? Are there many cases in which issues involving land-use restrictions are — are raised in litigation against a State as opposed to a municipality? It's quite rare. I'm aware of one pending case in Vermont where there's a challenge to a State environmental regulation, but for the most part it isn't. But, you know, if this Court were to, you know, section — the provision that we're talking about here applies to land-use as well as to institutionalized persons, and one would ordinarily think that the statute would have the same meaning depending on context. I recognize that the State's basic argument is that the meaning changes depending on who the defendant is, and I suppose if you accept that, it could also depend on what provision is being applied. But that's not normally how statutes work. But the answer to Justice Alito's question is that in the land-use area, zoning, for example, those are mostly cases against municipalities or counties. That is correct. Not against the State. That is correct. The government is going to tell us that the standard for waiver with respect to the Federal government is different from the standard with respect to the State. Do you — I think that's what they're going to tell us. Do you agree with that? No. I actually don't understand them to be making that argument either, but I know for sure that that's not our position. And then the Court's decision in Barnes, I think, for example, is entirely consistent with the Court's recent decisions, including, for example, in Richland, where it's made clear that when you're considering the scope of a waiver of sovereign immunity, you engage in ordinary statutory interpretation, and then the sovereign is respected if at the end of that interpretation the statute remains unclear. You know, certainly the sovereign wins, but in a case— But it seems to me that the States are in need of special protection with the Congress. If it's a Federal immunity, the Congress can always change its laws. Well, that just can't happen with the State. I don't know that this Court's cases support the idea that there's a heightened clear statement rule for States versus the Federal government. If anything, I think they suggest the opposite. But so long as the statute is clear— It's the suggestion of the opposite that I'm trying to explore. But you have your white light on. Thank you. Thank you, Mr. Russell. Ms. Harrington. Mr. Chief Justice, and may it please the Court. The Respondent in this case agrees that when it accepts Federal funds for its correctional system, it voluntarily waives its sovereign immunity to private suits in Federal court to enforce RLUIPA. And it is clear under this Court's decisions in cases such as Franklin and Barnes that that voluntary waiver encompasses a waiver to suits for money damages. Suppose Congress passes a statute that creates a private right of action against both the Federal government and against the States, and in both instances authorizes all appropriate relief. Are damages available in the action against the Federal government as well as the State government? Well, it would depend on the context to answer both questions. Well, the State provision is a spending clause provision. Then the answer would be yes, as to the States. This Court has been clear in cases such as Franklin and Barnes that in the spending clause context, unless Congress indicates an intent to rebut the presumption somehow. But what about the Federal government? In the Federal government, probably not, although this Court has looked to background principles in interpreting words such as appropriate. What sense does that make? Other than, I know you are representing a client, and so special pleading for your client is to be expected. But I find that very difficult to accept. If all appropriate relief includes damages as against the State that accepts Federal money, then, you know, what's good for the State should be good for the Federal government. Well, I'd say two things. First, in both cases, what you want is the clear statement of an intent to waive the sovereign's immunity, either by the Federal government or the State government. And also that it's important to keep in mind that in cases such as Franklin and Barnes, this Court was construing statutes that did not say anything about what remedies were appropriate, didn't mention remedies whatsoever. And so we don't rely so much on relief as use of the phrase appropriate relief as we do on the spending clause context. Ginsburg. But those cases didn't involve States, right? Those cases did not involve States, it's true. And I think that the core question here is the State, as Justice Alito just posed it, the State is being treated with less dignity than the Federal government, because your position is that the Federal government is shielded by its sovereign immunity, and you say the State is not. On the contrary, as to the dignity point, Your Honor, it's the State voluntarily waives its immunity when it accepts Federal funds that clearly condition the acceptance of the funds on the waiver of its immunity. The State in this case doesn't contest that it has waived its sovereign immunity voluntarily to some universe of suits to enforce it. But we're talking about general principles of interpretation, and the proposition that we're suggesting is the State surely should be entitled to the same dignity and the same protection against suits as the Federal government. And you suggest just the opposite. No, Your Honor. And it seems to me that that's contrary to standard principles of the Federal balance, of protecting the Federal balance. If you were construing a State statute that voluntarily waived its own immunity, then you might we might say the use of appropriate relief in that statute should be construed the same as the use of appropriate relief in RFRA. But in this case, you're not talking about a State's waiver of its immunity through statutory language. The Court said in College Savings Bank that when a State takes Federal funds that are conditioned on a waiver of immunity, it is the act of accepting the funds that is the waiver, and it waives its immunity to suits to the extent that it hasn't noticed that it is doing so. But it's only because they accept the funds at all that the spending clause is even operative. That's right. But again, it's the act of accepting the funds that are clearly conditioned that constitutes the waiver. So the Federal government can say, it says appropriate relief. All right. We accept that we're going to be vulnerable to an injunction suit. But with the State, and it's our treasury, and it's not appropriate relief. We didn't waive it. It's not, it doesn't say in the spending clause legislation that we open up our treasury to the State. But there's no basis in either the Eleventh Amendment or the statutory provisions in RLUIPA for distinguishing relief of an injunctive nature from relief in damages against the State. The Eleventh Amendment talks about suits in law and in equity, and there's nothing in RLUIPA that would give the States notice that they are waiving their immunity to suits for injunctive relief, but not give them notice that they are waiving their immunity to suits for money damages. This Court, again, can't say that. Scalia, the word appropriate would suggest that to me, if I'm a State attorney general, and I know that the rule is sovereign immunity, and especially with regard to raids on the State treasury, I think it would be at least plausible that I would read appropriate relief not to include monetary relief. And we have said, the language from our case is Lane says a waiver of sovereign immunity is a statutory text and will be strictly construed in terms of its scope in favor of the sovereign. That's a high test, and although I might sit down and come out with the conclusion after intensive study that maybe the best reading of this statute is that it allows money damages, I find it hard to say that it is unequivocally expressed in the statutory text. Well, two things, if I could, Your Honor. In Lane v. Pena, the question before the Court was, it wasn't, it was outside the Spending Clause context, because the question was whether Section 504 of the Rehabilitation Act applied to the Federal Government. And when the Federal Government applies, even in Spending Clause context, conditions on itself, there's no contract-like relationship. But the second thing, this Court said in Barnes. You deny that it has to be unequivocal? It has to be unequivocal, but the context in which you're construing whether the sovereign is expressing its intent to waive its immunity, it's different when you're talking about the Federal Government applying obligations on itself than when you're talking about the Federal Government offering money to a State in exchange for its agreeing to comply with certain conditions. Sotomayor, that has nothing to do with whether the language is clear enough to constitute a waiver, and there's no principle of law that you're articulating that says it has to be, this is not clear enough for the Federal Government, but it is clear enough for the State. Appropriate relief either has a meaning or it doesn't. Right. And again, we're not relying so much on the use of the phrase ''appropriate relief'' in the statute. What that, the work that does is it affirms that the background presumption of the Bellevue Hood cases applies to proper defendants under RLUIPA, which includes State governments. But as this Court said in Barnes, when a recipient of Federal funds takes the funds, it's unnoticed that it is going to be subject not only to the remedies explicitly provided in the text of the relevant legislation, but also to remedies that are traditionally available in suits for breach of contract, and those include compensatory damages and injunctive relief. The State would have this Court turn that presumption, in terms of the traditional contract rules, on its head by saying that this Court should hold that the State presumptively waives its immunity to suits for injunctive relief, but not for damages. Breyer, I think I read in one of these briefs that what I think was the most relevant quote, similar statute, RFRA, has been held not to encompass the same word, not to encompass the monetary relief, and also there was some legislative history where people testified and told Congress at the time that the word ''appropriate'' won't encompass monetary relief. Am I remembering that correctly? Well, I would give you the same answer I just gave, which is that we're not pointing so much to the use of the using the phrase ''appropriate relief'' in the statute as we are to the Spending Clause context. And this Court has held that when there is these conditions placed on Federal funds, the recipient of the funds understands when it takes the money that when it intentionally violates the conditions to which it has agreed, it will be subject to suit for money damages. Ginsburg's But then you're bracketing the State with the counties and municipalities. And it really comes down to a question is who decides whether the State FISC is touched? And why isn't it most appropriate for this Court to say Congress can call it either way, but our rule is Congress, if you want to reach the State's treasury, you have to say so explicitly. And then there's no doubt when the State enters a contract that it's going to be subject to money damages as well as injunctive relief. Well, this Court has consistently applied a clear notice requirement to conditions that Congress places on Federal funds. That clear notice requirement arose out of cases like Pennhurst and South Dakota v. Dole, in which there were State recipients of Federal funds. And the Court said that the validity of Congress's constitutional action in exercising its Spending Clause authority depends on it giving the recipients of the funds clear notice of the conditions that they are agreeing to because of the contract-like nature of Spending Clause legislation. Now, that same rule was applied in Franklin and Gebser and Davis and Dole. Even though the defendants in those cases were not sovereigns, it's still the same notice requirement. And there's no reason to think that a county government would be able to understand would be on notice that it would be subject to compensatory damages suits, and a State government would not. To be sure, the State government has more to give up. It might be a harder choice for the State about whether to take the money or not. But the choice is the State's. And when it says, yes, I'm going to take this money, it agrees to the conditions that are attached to the money. Roberts. Thank you, counsel. Thank you. Mr. Ho. Mr. Chief Justice, and may it please the Court. The phrase, appropriate relief, is a textbook example of ambiguity, not unmistakable clarity. And that should end the inquiry. After all, if it is why is injunctive relief included at all? Meaning, what you seem to be saying to me is that no relief should be appropriate, because no relief is clear, whether it's injunctive relief or damages. Well, we agree with the U.S. reading of RFRA. The U.S. is reading with RFRA. The same should attach here. There is an express cause of action. So that cause of action has to do something. And we're applying to that express cause of action the narrowest reading, which is. Sotomayor, some would say that injunctive relief attaches more to the public fist than compensatory relief, because future conduct or the change of conduct can have an enormous intrusion on the public fist. So why do we draw the line between saying one is more intrusive than the other? Two answers, Your Honor. The traditional line drawing that you see in sovereign immunity is injunctive relief, indeed any prospective relief, is less intrusive on sovereign immunity than any form of retrospective relief, damages and that sort of thing. That's especially true in this context, because when you talk about the Spending Clause, we can walk away from an injunctive relief, from an injunction at any time. We can simply stop receiving the funds, stop accepting the funds, and the injunction evaporates. We can't walk away from a damages remedy. So we're construing the express cause of action in our LUPA, like in RFRA, to do the judicial minimum, which is that judicial relief, which requires States to do what we're already required to do, which is to comply with the substantial burden mandates under our LUPA. So the fact that appropriate relief is essentially inherently ambiguous should end the analysis, because after all, the Court has required unmistakably clear text and rejected merely permissible inferences for two reasons, to ensure both careful, robust deliberation by Congress before disturbing the Federal-State balance of power, as well as to ensure clear notice of the State's own. Breyer, as looking at the cases as best I can at the moment, I think you might say that there are a lot of cases which interpret the word appropriate relief to include monetary relief. And then there are some that don't. And to get a rule out of them, you'd have to say, well, they're looking to context, and in context it's sometimes clear, sometimes occasionally not. But here, isn't this, and maybe this was asked, but I want your answer, the context here, the words appropriate relief, govern both the prison situation and the land use situation, don't they? You're given an action when the government, through a general land use regulation, infringes somebody's right to build, for example. Now, wouldn't that kind of interference with the use of property quite often and normally require some kind of monetary compensation? I mean, this isn't just the odd thing in a prison where it's talking about, it might be called building a religious building or building some kind of parking, all kinds of things that have monetary compensation. Do you see my question? I think I do, Your Honor. First of all, we certainly agree with your premise, which is that context matters. The Court has said specifically appropriate relief can enlarge, it can contract. It can mean monetary, but it can mean not monetary. So it does depend on context. I confess your land use question is interesting. We're obviously focused on the section 3 in this case. Breyer, I know, but isn't it the same word that governs both? It is the same word. Well, if it's the same word that governs both, and if land cases very often involve claims for money, I would think that would cut against you. But that's why I ask, I want to get your response. Well, we're still looking for expressed language in the text. But there are loads of cases that have nothing more than appropriate relief, and in those cases, context makes it clear. The only one, really, I thought strongly on, that your strongest case seemed to me to be RFRA. Well, RFRA certainly is the direct context from which the words appropriate relief in this statute are drawn. And RFRA, of course, is land use, it's prisons, it's anything. RFRA applies to the Federal Government for any activity under the sun. So for that reason alone, I think we might resist the notion that the specific uses of appropriate relief in ARLUPA would somehow provide any sort of change or certainly any expectation that we would have or that Congress would have for that matter, that the words appropriate relief would take on a new meaning just because it's land use. Breyer. I mean, so often what I'm thinking of, a church wants to build, and they can't because of a land restriction. And it turns out that that land restriction violates this statute. And in the meantime, they've had to rent buildings, they've had maybe to build somewhere they've had to do all kinds of things that cost money. And that's why I would think in that context, money would be a natural thing. I'm not sure that would fill appropriateness. I'm actually not sure that that would be true even in that context. Certainly anybody might want money. But when it comes to what Congress has indicated and what States would expect, I would imagine that the Federal Government's biggest interest is in making sure that States and other recipients use the money for what it's supposed to be for, comply with the substantial burden mandate. And if a local government is not doing so with regard to a church, then they should be enjoined so that they would be required to comply with it. If anything, damages might exacerbate the problem just in the sense that we're now taking Federal money and providing damages for everybody. Ginsburg. But I thought a local government would be subject to damages. We're talking about the State. We are talking about the State, Your Honor. To be clear, we do not actually concede that damages would even be available against a local government. Our point here is simply that it doesn't matter for us, because we obviously are treated very differently from local governments. I think they have — both Petitioner and the U.S. have indicated that the statute should treat the State and locals the same way. The problem with that is the Constitution obviously treats States and locals very differently. The Constitution treats the State and Federal government in the same way, in that both enjoy sovereign immunity, and included in that are the principles of sovereign immunity, the need for specific waiver, not just a clear waiver, but specific as to the scope of the waiver and specific as to the remedies. Sotomayor. So now we have three distinctions. With respect to land use discrimination, the Rehab Act would presumably apply. So the Rehab Act says compensatory damages are permissible for that kind of discriminatory claim. So now we have compensatory damages for that. We have potentially compensatory damages for local governments, but not for State or Federal. We are chopping up the statute at each stage, correct? We are treating different defendants differently and different — claims differently with respect to the relief that's permissible. That would not be our submission, Your Honor. If we are talking about the 2007 language, all that 2007 says is if you are a provision prohibiting discrimination, then you get the same remedies against a State that you would get against any other non-sovereign defendant. And if we were representing the City of Austin, we actually would argue, we think we'd have good arguments, that damages would not be available even against the City of Austin. Our point here is simply that, however — Sotomayor, could you explain why? Sure. I think if I were the City of Austin, I would make three arguments. One, the words appropriate relief are in the statute. I think they — the other side wants to read this as surplusage. We would think that the words appropriate relief should do something. And we note that there were several justices who dissented in West v. Gibson, noting that the words appropriate relief seem to indicate equitable discretion — discretion and therefore equitable relief. In addition, we'll note that the words appropriate relief in 4A— But equity permits money as well. Equity permits money as well. In some limited formats, but it wouldn't be compensatory damages in the sense that we are talking about in this case. An additional indication would be the fact that the words appropriate relief aren't just attached to claim. It's attached to both claim or defense. And of course, it makes no sense to say that you can get money damages by asserting Arluppa as a defense. So for all those reasons, the City of Austin might actually have a good case that damages aren't available even against them. Of course, it doesn't matter for our case, because the whole point is if the City of Austin were to lose due to Barnes and Franklin, what we know for sure here is that Barnes and Franklin have nothing, nothing whatsoever to do with the States. If I may, I'll spend a little bit of time on that issue. Alito, before you do that, Barnes and Franklin were cases involving implied rights of action, isn't that right? Yes, with the 2007 backdrop, but yes, Your Honor. Okay. So the court— Kennedy, I have this one question maybe covered, but can you give me any examples where States have turned down money under the Spending Clause, say we don't want it, the restrictions are too great? Does this happen all the time or ever? Where States turn down money? States tell the Federal Government, no, thank you, we don't want the money. It's starting to happen in Texas. Under programs like this? I don't — I can't think of a situation where Texas has turned down Arluppa Federal prison money. And I mean other States. They say, oh, the liabilities are just too great, we don't want it? I'm not aware of any State in the country that has turned down Federal prison funds. Of course, if damages were somehow inflicted, if Congress changed the law, perhaps States would start to recalibrate that decision. Their core argument is that we should just extend Franklin and Barnes to States. The fatal flaw with that argument is that the very principle on which Franklin and Barnes apply — are premised, that principle does not apply to sovereigns. When Congress passes a cause of action and is silent or ambiguous with respect to the remedies, there is a traditional presumption that we apply. Non-sovereigns now expect to be subject to any possible remedy under the sun. Precisely the opposite rule applies to sovereigns. We know that for sure as a matter of precedent in Lane, which rejected Franklin as applied to a sovereign. But we also know this as a more fundamental basic principle of sovereign immunity. Because when it comes to sovereigns, we have to have not only a clear waiver, but also a waiver that is specific to the remedy that is being sought. These two rules can't be reconciled. You're either going to apply the traditional presumption of all remedies or you apply the other rule that sovereigns benefit from. A Petitioner claims that maybe a special rule should apply that's unique to the Spending Clause, that maybe that's a way to get around the sovereign immunity problem. But we submit that fundamentally misreads Franklin and Barnes, because what's doing the work in Franklin and Barnes isn't the Spending Clause. It's actually quite the opposite. The Spending Clause is cutting back against the traditional presumption. In Franklin, I'll take each case in turn, in Franklin you see pages and pages of analysis in I think section 2 of the opinion, where there's exhaustive research about Bell v. Hood and the traditional presumptions that the Court has applied for decades under any font of Federal power. The Spending Clause makes an appearance in Franklin only at the very end in section 4, invoked by the defense as a potential reason not to apply the traditional presumption. The Court, you know, gets past that on the ground that the traditional presumption is so strong that it does provide the clarity for non-sovereigns. It doesn't get indisputably applies to non-sovereigns. Why not apply it under the Spending Clause as well? The point, though, is it's not the Spending Clause that does the work. It is the traditional presumption. That has even more dramatic force in Barnes v. Gorman. Mr. Gorman would have had a $1.2 million punitive damage award that he would have been entitled to except for the fact that this is a Spending Clause case, and that's precisely why he lost that punitive damage award. So put simply, yes, it could be that under Barnes v. Franklin, remedies would be clear enough in that one context. The problem is it's not clear enough in this context, because sovereigns present a completely different constitutional context. I want to address very quickly Justice Sotomayor's question about Ex parte Young. I think you were exactly right that Ex parte — that our reading isn't in any way redundant with Ex parte Young. But I want to note an additional reason why we're not redundant. We need to confirm, Congress needed to confirm, that there was in fact a privately enforceable right. And that's why our reading in no way renders the Ex parte Young concept redundant. Ginsburg. Ginsburg. What do you do with the practical problem that's been brought up, that if a State is sued, it can release the prisoner, it can transfer the prisoner, and then no relief is appropriate, that the only way the State is going to take its obligation seriously is if it's exposed to compensatory damages? If a prisoner is transferred, released, or if the State simply changes its mind, gives up, provides the accommodation, in all those situations, the prisoner is no longer suffering from the complaint of condition. And that's why this Court's mootness doctrines would apply. Put another way, mootness is really just another word for settlement. And we would think that settlement, the State essentially capitulating and saying, you know, our bad, we should have complied, we should have provided the accommodation, that actually vindicates the purpose of our loop. And indeed, it avoids the need for costly litigation to do so. I want to mention briefly the U.S. contravecta. Sotomayor, What's the inducement to do it more quickly rather than to delay? To remedy the wrong faster rather than to delay. The reason to do it, it's simply to avoid litigation. I mean, the way this works practically on the ground, prisons obviously have a lot to deal with, a lot of security concerns. They set general policies. They may not be aware that their policy might have an implication for a certain individual of a particular faith. If that's brought to their attention, and then the other thing is that's an ideal world that they'll respond. But there's an allegation that some prisons wait until the eve of the trial after onerous discovery on the plaintiff and after enormous harm to plaintiffs, physical and otherwise, before they capitulate. So what's the inducement? Well, the inducement is to the States are suffering the litigation costs as well. We're not in the business to litigate just because we want to. We have plenty of other suits to deal with. This very case, I think, is a good example. Once the prisoner, once Mr. Sossaman grieved with respect to the cell restriction policy, we immediately abandoned that policy before litigation was even filed. With respect to the U.S. cause of action provision, there was an argument that appropriate relief has to mean damages, because otherwise, just take that declaratory or injunctive relief language and put it into the private cause of action. The reason that argument doesn't work is because these are two fundamentally different provisions. There's 4F of RFRA, which is the U.S. cause of action, and there's 4A of, I'm sorry, of ARHLUPA, and there's 4A of ARHLUPA, which is not just a private cause of action, but also a defense. So, again, if you can imagine sticking in the words declaratory or injunctive relief and putting it right into 4A, it doesn't work. It doesn't make any sense, because what person asserting a defense would seek an injunctive relief? Breyer, let me ask to get this information from you. As I understand it, there are some cases that define the words appropriate relief in a statute to include damages, and there are some that don't. Let's look at the ones that don't. There are some where it's pretty hard to do it because it's in a heading called injunction, and that's obvious. But there are only two statutes, really, where the courts have ever held in significant numbers that the word appropriate relief does not include money damages. One is the IDEA, the Disabilities Act, and the other is RFRA. Is there anything else that you've come across? Those are two great examples. Yeah, but are there any other? I mean, those are just going to get down on a piece of paper what I have to look at. Sure. I think those are two great examples. I would note. So you don't have any others, I'm judging from your hesitation. Well, no, I would actually note there are two other cases that I would refer you to all, and they are, of course, discussed in the briefs. West v. Gibson, which talks about how the words appropriate relief, I think it's remedies in that context, by definition have no fixed meaning. They can't possibly have fixed meaning, so it would have to enlarge or contract. And prior to 1991, prior to the 1991 amendment at issue in that case, the Court unanimously agreed that appropriate relief would not have included money damages. Ruckelshaus provides similar guidance in that I think the phrase was there was no possible no comprehensible or principled meaning to the phrase appropriate as attached to a remedy. I'll briefly touch on the 2000d7 issue, unless there are questions about that. Assuming the issue is even preserved for this Court's consideration, 2000d7 doesn't allow relief either. I think there are a lot of reasons why that would be so, but I think the simplest is simply to acknowledge the difference between section 2 of our LUPA and section 3. Section 2 of our LUPA is much like the four provisions expressly enumerated in 2000d7, in that all of them have the word discrimination and, more importantly, turn on the concept of discrimination. A discrimination is an element of a cause of action under section 2 or under any of the four provisions enumerated. By contrast, section 3 is not. You can have discrimination as part of your fact pattern if you want, but it will have nothing whatsoever to do with whether you have a valid section 3 claim or not. You've already addressed this, but I take it the position of your friends on the other side of the case is that with the spending clause, you have a contract. The State has some extra protections, and therefore, we need not be quite so strict. in construing waivers of immunity, because you have the contract. Can you comment on that argument? You might want to say that the spending clause is potentially so sweeping that the State should have special protection, and we should be particularly careful about the clear statement rule. Or do you think the clear statement rule applies with equal force, whether it's the spending clause or direct regulation under, say, the Fourteenth Amendment? I'll try to take each of those points in turn. We don't see anything in the law that suggests that sometimes there's a clear statement rule and sometimes there's a super-duper clear statement rule. I think there's been some suggestion or maybe there has not been anymore. I'm not sure. I read the briefs, I think, the same way that the justices did. But they seem not to be arguing that anymore. So it should be the same standard. I certainly acknowledge that when it comes to the spending clause, as you wrote in your dissent in Davis v. Monroe, that the spending clause, if anything, does raise special constitutional considerations as a general matter, inasmuch as the spending clause could be used to impose Federal restrictions on States that they could never dream of under Article I otherwise. Our loophole, of course, is a prime example of that. But at the end of the day, the spending clause is not doing any work with regard to providing an assumption or a presumption of remedies. Again, it's exactly precisely the opposite. Franklin and Barnes both articulate that it's the traditional presumption that applies to any exercise of Federal power. That traditional presumption is what's doing the work. The spending clause, if anything, is a cutback. So the notion that just invoking the spending clause suddenly puts States on this fabulously clear notice I think just does not work. If there are no further questions, Your Honor. Roberts Thank you, Mr. Holmes. Holmes, thank you. Mr. Ross, you have 4 minutes remaining. Ross Thank you. Nearly every argument the State made here today could have been made by the local governments and Barnes, ranging from the complaint that the language like appropriate relief is too unclear to the assertion that they were not on notice, that by accepting Federal funds they were subjecting themselves to suits. And that's because the local governments, like any other State, have the same right to the same clear statement rule. Unless this Court is, in fact, going to create a proliferation hierarchy of clear statement rules, the Pennhurst rule that applies in the spending clause context to local governments applies in exactly the same way to a State government under the Eleventh Amendment. And Barnes's court construed the express private right of action under Section 504, which incorporated by reference the remedies available under Title VI, which this Court construed to authorize appropriate relief, exactly the same remedy that RLUIPA authorizes. And so the State for the first time today has suggested that the City of Austin is not bound by Barnes. I don't see how they can reach that conclusion. Barnes quite clearly says that the local government is subject to, is on notice, that has clear, there's a clear statement in every spending clause statute, that they're subject to a damages remedy so long as they accept the funds because of the contractual nature of the obligation. That applies. Scalia, was that contested in Barnes? Which part, I'm sorry? Was the liability for compensatory damages contested in Barnes? Now, the question in Barnes was punitive. Just punitive. And there's a lot of discussion, the assumption that they were liable for compensatory, but it really wasn't litigated, was it? Well, the legal principle this Court adopted to resolve that issue was one that, I take it, was not just a principle for that case, but that, in general, funding recipients are on notice that they're subject to contract remedies. And unless this Court is going to back away from that as a general matter, unless the Court's going to say that Pennhurst applies differently in the spending clause context than it does in the sovereign immunity context, I don't see how you can come to a different result in this case. Justice Breyer, with respect to RFRA, as far as I know, there's only one court of appeals case that says the United States is not subject to suits, and that was decided 6 years after RLUIPA was enacted. With respect to the IDEA, there are a handful of lower courts' decisions that say damages aren't available. Those that they give reasons that are specific to the IDEA and the fact that that remedial provision is part of the due process hearing process there. In general, damages are the quintessential appropriate relief for violations of civil rights, and there's no reason to think that Congress was creating in RLUIPA a second-class civil right that wasn't deserving of a make-all remedy that Congress has provided, even against States in every other context. With respect to the State's belief that the Eleventh Amendment somehow prefers injunctions over damages remedies, as counsel for the United States pointed out, the Eleventh Amendment has no basis for that. It treats injunctions and damages as equally offensive to State sovereignty. And in fact, particularly in RLUIPA, where damages are often capped significantly by the PLRA, that the concern really ought to be on the State's part by injunctive relief, which will frequently have a much more significant effect on the public interest than a small damages award. And finally, with respect to the State's argument that the words appropriate relief are too inherently ambiguous to meet any clear statement, well, this Court rejected that kind of argument in West, where it construed appropriate remedy to encompass a damages remedy by engaging in ordinary statutory interpretation, which is entirely appropriate in this context. This Court has repeatedly, in cases like Ruckelshaus, for example, like Richland, relied on how statutes apply with respect to private parties to give meaning to the otherwise ambiguous word appropriate in a Federal statute waiving the Federal Government's sovereign amenity. Thank you. Roberts. Thank you, counsel. The case is submitted.